1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7     UNITED STATES OF AMERICA,                    Case No. 22-cr-00093-JSC-1

           Plaintiff,
8
                                                   **ORDER OF RESTITUTION**
9          v.

10    DEBBIE DUTTON,

           Defendant.
11

12

13        Debbie Dutton pled guilty to Assault by Striking or Wounding on an Aircraft in violation

14    of 49 U.S.C. § 46506(1) and 18 U.S.C. § 113(a)(4).  In her plea agreement, Ms. Dutton agreed that

15    on a flight on June 29, 2021, she made "intentional unwarranted contact" with the victim, and that

16    such "striking" caused the victim "bodily injury."  (Dkt. No. 33 ¶ 2.)[1]  With respect to restitution,

17    the plea agreement specified:

18           I agree to pay full restitution for all losses caused by the schemes or
             offenses with which I was charged in this case, and I understand that
19           the amount of restitution will not be limited to the loss attributable to
             the count to which I am pleading guilty, pursuant to 18 U.S.C.
20           3663(a)(3).   I understand that the Court will not consider my
             economic circumstances in determining the restitution amount.
21

22    (*Id.* ¶ 9.)  The Court sentenced Ms. Dutton to time served plus one year of supervised release and,

23    in accordance with the plea agreement, ordered that she pay restitution.  (Dkt. No. 36.)  As the

24    parties dispute the amount of restitution that should be ordered, the Court held an evidentiary

25    hearing on the restitution order on July 8, 2022.  Prior to the hearing, both parties submitted

26    written memorandum and exhibits.  At the hearing itself, the victim testified under oath and was

27    _____

28    [1] Record citations are to material in the Electronic Case File ("ECF") unless otherwise noted;
      pinpoint citations are to the ECF-generated page numbers.

United States District Court
Northern District of California

1    cross-examined by defense counsel.

2                                    **DISCUSSION**

3           The government seeks a total of $28,546.69 in restitution. This amount consists of the

4    victim's lost wages for three months being off work following the incident ($18,190.23), lost

5    income for time spent attending physical therapy after she had returned to work ($5,856.84), lost

6    income for attending doctor visits after she returned to work ($1,378.08), lost income for attending

7    counseling sessions after she returned to work ($344.52) and sick leave ($2,777.02).

8           A dispute as to the proper amount of restitution must be resolved by the district court under

9    a preponderance of the evidence standard.  *See* 8 U.S.C. § 3664(e); *see also United States v.*

10   *Clayton*, 108 F.3d 1114, 1118 (9th Cir. 1997).  The government bears the burden of proving that a

11   person or entity is a victim for purposes of restitution, and of proving the amount of the loss.

12   *United States v. Waknine*, 543 F.3d 546, 557 (9th Cir. 2008).  The Federal Rules of Evidence do

13   not apply to restitution hearings.  *See United States v. Yeung*, 672 F.3d 594, 606 (9th Cir. 2012).

14   However, "the district court [may] utilize only evidence that possesses 'sufficient indicia of

15   reliability to support its probable accuracy.'"  *Waknine*, 543 F.3d at 557 (cleaned up).

16          **A.      Defendant's Economic Circumstances**

17          In her initial written submission and at the evidentiary hearing, Defendant argued that it

18   would be "plain error" for the Court to apply the Mandatory Victims Restitution Act (MVRA), 18

19   U.S.C. § 3663A, rather than the Witness and Victim Protection Act (WVPA), 18 U.S.C. § 3663,

20   and therefore not consider her economic circumstances in determining the amount of restitution.

21   (Dkt. No. 45 at 4 n.3.)  The Court is not persuaded that it must consider Ms. Dutton's economic

22   circumstances.  While the WVPA requires the trial court to "consider . . . the financial resources of

23   the defendant, the financial needs and earning ability of the defendant and the defendant's

24   dependents," 18 U.S.C. § 3663(a)(1)(B)(i)(II), in a subsequent subsection it provides that "[t]he

25   court may *also* order restitution in any criminal case to the extent agreed to by the parties in a plea

26   agreement."  18 U.S.C. § 3663(a)(3) (emphasis added).  The structure of section 3663

27   demonstrates that subsection (a)(3) is authority to order restitution independent from subsection

28   (a)(1) (which includes the provision requiring consideration of economic circumstances).  *See*

United States District Court
Northern District of California

                                                2

United States District Court
Northern District of California

1    *United States v. Zink*, 107 F.3d 716, 719 (9th Cir. 1997) (permitting restitution order regardless of

2    ability to pay where a defendant has "clearly acquiesce[ed]" to restitution); *accord United States v.*

3    *Thompson*, 39 F.3d 1103, 1105 (10th Cir. 1994) ("While reluctant to absolve district courts of any

4    responsibility for determining the proper amount of restitution, we believe the statute allows the

5    sentencing court to be guided by the terms of the plea agreement.")  Therefore, under subsection

6    (a)(3), a "specific agreement to make restitution . . . obviates the need to consider financial

7    circumstances under 3663(a)(1)(B)."  *United States v. Kindelay*, 2007 WL 2410343, at *7 (D.

8    Ariz. Aug. 21, 2007), *aff'd*, 313 F. App'x 950 (9th Cir. 2009) (cleaned up).

9         Ms. Dutton agreed in her plea agreement that she would pay restitution and that the Court

10    would *not* consider her economic circumstances in determining the restitution amount. (Dkt. No.

11    33 at ¶ 9.)  Thus, even if Defendant is correct that her offense of conviction does not qualify for a

12    restitution award pursuant to the MVRA, in light of her plea agreement, an award that does not

13    consider her financial circumstances is still appropriate under the WVPA.  *See Zink*, 107 F.3d at

14    719; *see also United States v. Soderling*, 970 F.2d 529, 534 (9th Cir. 1992) (holding that section

15    3663(a)(3) "permits courts to order restitution in any criminal case to the extent agreed to . . . in a

16    plea agreement") (emphasis omitted; cleaned up).  Further, were the Court to consider ability to

17    pay, Defendant has not met her burden to demonstrate she is unable to pay restitution.  *See* 18

18    U.S.C. § 3664(e); *see also United States v. Nazifpour*, 944 F.2d 472, 475 (9th Cir. 1991) (stating

19    that defendant has the burden to demonstrate inability to pay restitution). There is no evidence in

20    the record as to Ms. Dutton's current economic circumstances.  The Court will therefore order

21    restitution in accordance with what Ms. Dutton agreed in the written plea agreement.

22         **B.      Amount of Restitution**

23         In advance of the evidentiary hearing, the only evidence the government submitted in

24    support of its restitution demand were invoices unaccompanied by any declarations.  (Dkt. No.

25    41.)  This evidence, alone, is insufficient to meet the government's burden of proof.  *See United*

26    *States v. Brock-Davis*, 504 F.3d 991, 1002 (9th Cir. 2007) ("[T]he government must provide the

27    district court with more than just . . . general invoices . . . ostensibly identifying the amount of

28    their losses") (cleaned up).  At the hearing, however, the victim testified under oath on direct and

3

United States District Court
Northern District of California

1    cross-examination.  Based on this testimony, the Court finds that it is more likely than not that Ms.

2    Dutton's offense caused the victim to lose $19,568.31.

3         The government has shown that it is more likely than not that the three months that the

4    victim was off work immediately following the incident was caused by the offense of conviction.

5    The record supports a finding that after visiting the airline's workers compensation physician

6    following the assault, the victim was taken off work status beginning June 30, 2021—the day

7    following the assault—and was not cleared by the airline's physicians for work until October

8    2020.  (Dkt. No. 41-2 at 37–39.)   The victim also testified that she was paid workers

9    compensation for the period off work, further confirming that the reason for her being off work

10   was the injury suffered from the June 29, 2021 incident.  The workers compensation covered two-

11   thirds of her income; thus she seeks the additional one-third that she is out-of-pocket.  Ms. Dutton

12   does not challenge the calculation of this amount of restitution, (Dkt. No. 45 at 6), only whether it

13   is warranted.  Accordingly, the Court orders $18,190.23 in restitution for the lost wages during the

14   three months the victim was out of work.  The income lost due to visits to the workers

15   compensation physician after the victim returned to work was also proximately caused by the

16   incident for the same reason. That amount is $1,378.08.

17        Ms. Dutton's insistence that the Court can only order restitution for losses caused *solely* by

18   her offense is incorrect.  Instead, the Court may award restitution for losses "for which the

19   defendant's conduct was an actual *and* proximate cause."  *United States v. Swor*, 728 F.3d 971,

20   974 (9th Cir. 2013) (cleaned up).  That is, the government must "show not only that a particular

21   loss would not have occurred but for the conduct underlying the offense of conviction, but also

22   that the causal nexus between the conduct and the loss is not too attenuated (either factually or

23   temporally)." *Id.*  Such a standard is not a "sole" cause standard.  Here, for the reasons explained

24   above, it is more likely than not that the victim was placed on workers compensation leave for

25   three months as a result of the bodily injury that Ms. Dutton agrees she caused the victim on June

26   29, 2021.  The factual dispute as to the severity of the assault, or whether Ms. Dutton struck the

27   victim once or twice, is immaterial given the temporal proximity of the relevant events.  There is

28   nothing in the record that suggests that between the time Ms. Dutton caused the victim bodily

4

1    injury (June 29) and the time that the victim was placed on leave (June 30), the victim suffered

2    some other injury which required the workers compensation leave.  Similarly, that the victim had

3    suffered workplace injuries more than two years earlier, injuries which may have been aggravated

4    by Ms. Dutton's assault, does not alter the finding that Ms. Dutton caused the victim to suffer

5    "bodily injury" which proximately caused the victim to go on workers compensation leave for

6    three months and suffer a loss of wages.

7         The Court also finds, however, that the government has not met its burden of proving that

8    the wages the victim lost by attending physical therapy appointments after she returned to work

9    were proximately caused by June 29 assault.  The victim's physician consistently reports that the

10   victim suffered right-side injury as a result of the incident.  (Dkt. No. 41-2 at 3, 4, 37–39.)  And

11   her physical therapy appointments are for ride-side pain through-out the three-month period she

12   was off work.  (*Id.* at 32.)  Yet, after about a two-month gap in physical therapy appointments

13   following her return to work, the victim returned to physical therapy for left shoulder pain.  (*Id.*)

14   The record does not support a finding by a preponderance of the evidence that the left shoulder

15   pain—which materialized five months after the incident—was proximately caused by the assault.

16   The government similarly has not shown that the single counseling session in December 2021—

17   nearly six months after the incident—was proximately caused by the assault.

18        Finally, the government has not established that the sick leave was caused by the incident.

19   While there is evidence that the victim took sick leave, there is no evidence as to when it was

20   taken.  (*Id.* at 19–24.)

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

United States District Court
Northern District of California

**CONCLUSION**

For the reasons explained above the Court finds that Ms. Dutton owes a total of $19,568.31 in restitution as required by her plea agreement and the Court's sentence.  This amount consists of $1,378.08 in lost income for doctor visits after the victim returned to work and $18,190.23 in lost income for the three months the victim was placed off work following the assault.

**IT IS SO ORDERED.**

Dated: July 21, 2022

_____
JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

6